Carlo A. ABRUZZO, Libelant,

v.

UNITED STATES of America, Respondent.

v.

AMERICAN STEVEDORES, INC., Respondent-Impleaded.

Milton GERMAN, Libelant,

v.

UNITED STATES of America, Respondent,

v.

AMERICAN STEVEDORES, INC., Respondent-Impleaded.

Nos. 62–A–443, 62–A–442.

United States District Court
E. D. New York.

Jan. 4, 1966.

Zimmerman & Zimmerman, New York City, for libelants; Morris Cizner, New York City, of counsel.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for respondent; Louis Greco, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, Bertram Carraway, Philip A. Berns, New York City, of counsel.

George J. Conway, New York City, for respondents-impleaded; John F. X. McKiernan, New York City, of counsel.

MISHLER, District Judge.

Two libels were filed by libelants claiming personal injuries incurred while in the employ of American Stevedores, Inc., respondent-impleaded, on U.S.N.S. COMET, a public vessel owned by respondent. The injuries having arisen out of the same circumstances, the actions were ordered "consolidated for the purposes of trial." (Stipulation "So Ordered", June 28, 1963).

On July 16, 1961, at about 8:10 A.M., libelants and seven other members of the hold crew descended to the lower hold of hatch #1 of the COMET to perform their duties in the discharge of cargo. The cargo consisted of conex boxes, i. e., boxes approximately 6 feet square by 6½ feet high and made of sheet steel and set on two steel runners about 4" high. The weight of an empty conex box is about 2,000 lbs. The boxes contained miscellaneous cargo.

The starboard side of the vessel was inshore. Three boxes were athwart the vessel in the square of the hatch. Libelants entered by stepping on the box on the starboard side. Two boxes were stowed forward, and under the hatch coaming. Other boxes were stowed aft. The boxes were chocked with lumber consisting of 6' lengths (more or less) of 4' x 4' lumber and braces. The cargo covered the deck.

The three boxes in the square of the hatch were first removed. This was done by engaging the four corners of each conex box by hooks attached to cable wire which, in turn, was attached to a ring. This ring engaged a cargo hook which was controlled by two winchmen employed by impleaded-respondent—one operating the up and down boom, the other the horizontal or Burton boom.

The boom was spotted in the square of the hatch, and positioned near the center of the first box discharged—the middle box of the three in the square of the hatch.

When the three boxes were removed, deck space of approximately 7' x 20' was visible. The deck surface of

the hold was steel plate. Libelants testified to the presence of quantities of oil, water and mixtures of oil and water on the deck. The Court rejects this claim as not proven by a fair preponderance of the credible testimony.

In order to lift the conex box located under the coaming of the starboard side, it was necessary to first remove it into the square of the hatch. Libelants lowered themselves to the deck and then hooked two cable wires into the two accessible corners of the box. The record shows that conex boxes were designed to accommodate the fork lifts on hi-los and that a hi-lo was part of the ship's equipment. The choice of this method of discharge of cargo was that of the stevedores. They intended to "drag" the box into the square of the hatch. Libelants signalled the winchman. He raised the box so that the front of the box was about two (2) feet off the deck while the rear portion was in contact with the deck. The maneuver did not go as expected. Libelants describe the movement of the box as a slide along the deck floor; the rear of the box turned or swung toward them catapulting a length of 4″ x 4″, which served as chocking, across the free space of the deck, causing the claimed injuries to both libelants.

■ The claim that the vessel's deck was slippery and dangerous by reason of the accumulation of rainwater, oil and/or grease is not supported by the record. A further claim is made in the manner of storage of the boxes. It is suggested that the failure to provide dunnage as a buffer between the steel runners of the boxes and the steel deck is the basis for a finding of negligence in the stowage, and a breach of the warranty of seaworthiness in the failure to provide a reasonably safe place to work. The Court finds that libelants failed to sustain their burden of proof on the issue. There is no showing that the proper practice is to place dunnage under steel conex boxes, or that the hazard to longshoremen is lessened by such procedure. It might be that loose lumber under moving boxes might be converted into missiles, thereby increasing the danger of injury. Nor has it been shown that a vessel is rendered unseaworthy because it has a deck of steel plate upon which steel conex boxes move with less friction than if it were surfaced with materials that would induce friction.

■ The shipowner's duty to furnish a seaworthy vessel and seaworthy appurtenances is absolute. The warranty, however, is to furnish a vessel and appurtenances *reasonably* fit for their intended use. Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941. A vessel may be unseaworthy because of defective construction or design. Tedeschi v. Luckenbach S.S. Co., 1963, 2d Cir., 324 F.2d 628, 630. The doctrine of seaworthiness "is a relative concept, dependent in each instance upon the circumstances in which its fitness is drawn in question." Lester v. United States, 1956, 2d Cir., 234 F.2d 625, 628, cert. dismissed, 1957, 352 U.S. 983, 77 S.Ct. 384, 1 L.Ed.2d 366; Mosley v. Cia. Mar. Adra S.A., 1963, 2d Cir., 314 F.2d 223, 227, cert. denied, 1963, 375 U.S. 829, 835, 84 S.Ct. 52, 73, 11 L.Ed.2d 61, 65.

■■ The shipowner was not under a duty to provide skidproof decks. Santamaria v. The SS Othem, 1959, 2d Cir., 272 F.2d 280. The warranty of seaworthiness required that the deck be reasonably fit for the work involved in discharging cargo.

■ The injuries to libelants were caused by the negligent use of equipment, to move the boxes into the square of the hatch. The stevedore had sole supervision and control over the manner of moving the cargo and use of the equipment. Arena v. Luckenbach S.S. Co., 1960, 1st Cir., 279 F.2d 186, cert. denied, 1960, 364 U.S. 895, 81 S.Ct. 222, 5 L.Ed.2d 189; Mosley v. Cia. Mar. Adra S.A., supra, 314 F.2d at 229 (concurring opinion by Friendly, J.). The sudden movement of the conex box was due to the improper operation of the booms by the longshoremen operating the winches.

The libels are dismissed.

■ Respondent's impleading petition seeks attorney's fees, costs and disbursements in its claim against respondent-impleaded. The shipowner's potential liability, and the necessity to defend against the claims, were the result of the breach by respondent-impleaded of its warranty to perform its stevedoring services in a workmanlike manner. Respondent is entitled to such damages. Palinga v. Luckenbach S.S. Co., 1962, 2d Cir., 301 F.2d 403, 408; Guarracino v. Luckenbach S.S. Co., 1964, 2d Cir., 333 F.2d 646, 648, cert. denied, 1964, 379 U.S. 946, 85 S.Ct. 439, 13 L.Ed.2d 543.

A hearing on the issues will be held on January 21, 1966, at 10:00 A.M.

Findings of Fact and Conclusions of Law were this day signed and filed.